# Fw: Legal brief

**Joseph Slovinec**

Fri 6/24/2016 4:46 PM

Sent Items

To lbrown@georgetown.edu <lbrown@georgetown edu>,

CLERK
US DISTRICT &
...RTS
2016 JUN 24 P II: 13
RECEIVED

Case: 1:16-cv-02035
Assigned To : Chutkan, Tanya S.
Assign. Date : 10/12/2016
Description: Pro Se Gen. Civil (F Deck)

---

**From:** Joseph Slovinec <jslovinec16@hotmail.com>
**Sent:** Thursday, June 23, 2016 5:48 PM
**To:** lbrown@georgetown.edu
**Subject:** Legal brief

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA



RECEIVED
Mail Room
JUN 2 7 2016
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Joseph Slovinec,
Plaintiff,
vs.
Georgetown University,
Defendant

FILING OF 42 U.S.C. 1983 COMPLAINT WITHIN 2 YEARS ON DUE PROCESS VIOLATION WITH EXPECTED ADDED INFORMATION ON RELATED EMPLOYMENT DISCRIMINATION CLAIM UNDER D.C. 12-301

1. I, Joseph Slovinec, file a 42 U.S.C. 1983 due process violation claim against Georgetown University for actions of Michael Smith of the Georgetown IDEAA office in a report of June 26, 2014 where he persisted in sympathy or support for false accusations I, Joseph Slovinec, disrupted the Georgetown campus when I peacefully visited the office of the Georgetown Hoya newspaper where I left a note with a young woman when Thomas M. Gibbons-Neff was not in: it was for a news release about Democrat Kevin Strouse for Congress.  He used an unnamed Georgetown employee in a wrong strategy to not overturn a Public Safety barring order yet claiming Georgetown would only support my visits to the Main campus if I got a job interview: there were none and his use of Director of Threat Assessment Marisa Randazzo had some positive points yet seemed to support his basic message to agree with slanderers who claimed my Hoya visit was dangerous or bad "behavior."The report will be provided to the court and Mr. Smith makes statements that are disrespectful of the the mission of the Workforce Investment Act with a grant that paid for my Georgetown Certificate in Project Management with performance standards that encouraged my hiring.MAIN CITATIONS:
Lane, Tully, and Williams, for Warner, Norcross, and Judd: March 11, 2015 on "Racial Discrimination by University Police and Security Officers": it said security officers at a private university like

Georgetown, the University of Chicago, were liable under 42 U.S.C. 1983 for excessive force when they were "unreasonable", and Mr. Smith supported unreasonable actions of Georgetown Public Safety.

Georgetown Law School, Continuing Education, 1999 on Litigating Employment. Alan Kabat and Debra Katz wrote on Remedies in Employment Litigation a 42 U.S.C. 1981 case like mine could cause an award of between $50,000 and $100,000 from an employer: I tentatively set damages for both due process and employment discrimination offenses in that range yet I could amend it after consultation with a lawyer: the judge can also order a minimum amount of damages for me to pursue the case.

2. There is a three-year time limit under D.C. Code 12-301 for my desired lawsuit against Georgetown Human Resources for discrimination against me as a homeless shelter resident, including hostile statements of Mr. Smith, in a subset of the 90 job applications I filled out at that department, with relation of Georgetown's responsibility under the Workforce Investment Act to help me find employment and seeming online preference in 2010 for hiring Project Empowerment recipients from mostly black Wards 7 and 8 with funds from the same D.C. Dept. of Employment Services: I am white. The time limits allow me to make statements on these 90 applications at a later time if they are less than three years old.

3. I, Joseph Slovinec, e-mailed U.S. Attorney Channing Phillips to note Mr. Smith encouraged successful mediation by Marisa Randazzo of Georgetown where we were able to agree Georgetown would support my continued possession of a few items at my vault at M.B. Financial Bank in Chicago and my interest in either moving back to Chicago after 47 years of Illinois residency or designating Chicago for use in an emergency. Yet I told Mr. Phillips Marisa abandoned the case in March 2015 and Georgetown was too apathetic in recent months in ignoring my request for mediation: this included a pending D.C. Office of Human Rights case. I am in forma pauperis with zero income and only $122 in the bank and I have difficulty in getting a legal counsel so I, Joseph Slovinec, ask leave to amend these pleadings. Thank you.

4. Please ask Ms. Brown if she wants to file a motion to keep portions of the IDEAA report under seal for confidentiality: it will be provided.

E-MAILED SERVICE TO: Vice President and General Counsel Lisa Brown, Georgetown University, Washington, D.C.
E-mail at lbrown@georgetown.edu
Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001 June 24, 2016

# Fw: Legal brief

CLERK
US DISTRICT &
BAN~~  ~C COURTS

2016 JUN 24  P II: 13

RECEIVED

**Joseph Slovinec**

Fri 6/24/2016 4:46 PM

Sent Items

To:lbrown@georgetown.edu <lbrown@georgetown.edu>;

---

**From:** Joseph Slovinec <jslovinec16@hotmail.com>
**Sent:** Thursday, June 23, 2016 5:48 PM
**To:** lbrown@georgetown.edu
**Subject:** Legal brief

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Joseph Slovinec,
Plaintiff,
vs.
Georgetown University,
Defendant



RECEIVED
Mail Room

JUN 2 7 2016

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

FILING OF 42 U.S.C. 1983 COMPLAINT WITHIN 2 YEARS ON DUE PROCESS VIOLATION WITH EXPECTED
ADDED INFORMATION ON RELATED EMPLOYMENT DISCRIMINATION CLAIM UNDER D.C. 12-301

1. I, Joseph Slovinec, file a 42 U.S.C. 1983 due process violation claim against Georgetown University
for actions of Michael Smith of the Georgetown IDEAA office in a report of June 26, 2014 where he
persisted in sympathy or support for false accusations I, Joseph Slovinec, disrupted the Georgetown
campus when I peacefully visited the office of the Georgetown Hoya newspaper where I left a note
with a young woman when Thomas M. Gibbons-Neff was not in: it was for a news released about
Democrat Kevin Strouse for Congress. He used an unnamed Georgetown employee in a wrong
strategy to not overturn a Public Safety barring order yet claiming Georgetown would only support my
visits to the Main campus if I got a job interview: there were none and his use of Director of Threat
Assessment Marisa Randazzo had some positive points yet seemed to support his basic message to
agree with slanderers who claimed my Hoya visit was dangerous or bad "behavior."The report will be
provided to the court and Mr. Smith makes statements that are disrespectful of the the mission of the
Workforce Investment Act with a grant that paid for my Georgetown Certificate in Project
Management with performance standards that encouraged my hiring.MAIN CITATIONS:
Lane, Tully, and Williams, for Warner, Norcross, and Judd: March 11, 2015 on "Racial Discrimination
by University Police and Security Officers": it said security officers at a private university like

Georgetown, the University of Chicago, were liable under 42 U.S.C. 1983 for excessive force when they were "unreasonable", and Mr. Smith supported unreasonable actions of Georgetown Public Safety.

Georgetown Law School, Continuing Education, 1999 on Litigating Employment. Alan Kabat and Debra Katz wrote on Remedies in Employment Litigation a 42 U.S.C. 1981 case like mine could cause an award of between $50,000 and $100,000 from an employer: I tentatively set damages for both due process and employment discrimination offenses in that range yet I could amend it after consultation with a lawyer: the judge can also order a minimum amount of damages for me to pursue the case.

2.  There is a three-year time limit under D.C. Code 12-301 for my desired lawsuit against Georgetown Human Resources for discrimination against me as a homeless shelter resident, including hostile statements of Mr. Smith, in a subset of the 90 job applications I filled out at that department, with relation of Georgetown's responsibility under the Workforce Investment Act to help me find employment and seeming online preference in 2010 for hiring Project Empowerment recipients from mostly black Wards 7 and 8 with funds from the same D.C. Dept. of Employment Services: I am white. The time limits allow me to make statements on these 90 applications at a later time if they are less than three years old.

3.  I, Joseph Slovinec, e-mailed U.S. Attorney Channing Phillips to note Mr. Smith encouraged successful mediation by Marisa Randazzo of Georgetown where we were able to agree Georgetown would support my continued possession of a few items at my vault at M.B. Financial Bank in Chicago and my interest in either moving back to Chicago after 47 years of Illinois residency or designating Chicago for use in an emergency. Yet I told Mr. Phillips Marisa abandoned the case in March 2015 and Georgetown was too apathetic in recent months in ignoring my request for mediation: this included a pending D.C. Office of Human Rights case.  I am in forma pauperis with zero income and only $122 in the bank and I have difficulty in getting a legal counsel so I, Joseph Slovinec, ask leave to amend these pleadings. Thank you.

4. Please ask Ms. Brown if she wants to file a motion to keep portions of the IDEAA report under seal for confidentiality: it will be provided.

E-MAILED SERVICE TO: Vice President and General Counsel Lisa Brown, Georgetown University, Washington, D.C.
E-mail at lbrown@georgetown.edu

*Joseph Slovinec*

Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001 June 24, 2016

JOSEPH SLOVINEC CV, GEORGETOWN UNIVERSITY
JUNE 27, 2016
PART A- PAGE 2.
BEFORE PART B- IDEAA

I need to alert you I needed to make 3 corrections:
It should read Mr. Smith "would not permit socializing for other purposes" (on Main Campus) and "malicious caller" not called
I have not decided on contacting T.M. Gibbons Neff who is a Washington Post intern yet I am notifying info@hoya.com and Emma Hinchliffe, Editor-in-Chief, that I may ask D.C. Office of Human Rights to contact a woman at the Hoya who took a note for him from me March 21, 2014 due to wrong scare tactics on a polite visit
and insert a p. 6 on 3 jobs..
I need to wait for your responses.
(NOTE: HOYA HAS ENTIRE TEXT EXCEPT FOR ONE ADDITION FOR OCT. 22 RECIPIENTS: I respectfully remind Marisa Randazzo IDEAA has favored U.S. Dept. of Labor contract compliance and we need respect for the Obama Administration and supporters in potential talks with U.S. Dept. of Labor on its expectations of WIA before I consider asking them to spend funds on a long-term unemployment program for myself: I may ask about it by next week.)

Joe Slovinec

From: jslovinec16@hotmail.com
To: jslovinec16@hotmail.com
Subject: RE: Filing of memo with D.C. government to ask for corrections in IDEAA Findings before Intake
Date: Mon, 20 Oct 2014 17:11:50 -0400

Memo
To:  D.C. Attorney General Irvin Nathan, D.C. Director of Office of Human Rights Monica Palacio, and President John deGioia of Georgetown with related administrators: his assistant Joseph Ferrara is asked to respect this is sent to a list of e-mails on Mr. Smith's IDEAA Findings and this list will be kept confidential . I also suffer from financial intimidation at a homeless shelter with only $124 in the bank and no income
From: Joseph Slovinec, 425 2nd St., N.W., Washington, D.C. 20001
October 20, 2014        Joseph Slovinec

        Please note the first section of this memo indicates what we agreed to between IDEAA and myself after Georgetown Institutional Diversity, Equity, and Affirmative Action (IDEAA) Notice of Findings in my "Political Discrimination/Harassment" case of June 26, 2014. A major defect happened when neither Rosemary Kilkenny or Michael Smith responded to facts I later gave about July 14, 2014 on"Retaliation" for complaining to D.C. City Councilman Jim Graham that the Georgetown Certificate in Project Management was for wealthy Virginians including some pro-military businesses and did not serve my needs to end my unemployment as a homeless shelter resident I gave it in later after I tried to wait to hear from the U.S. Attorney's Office.  The reason

AT JUNE 3, 2013, D.C. CITY COUNCIL COMMITTEE
ON HUMAN SERVICES MEETING

From: jslovinec16@hotmail.com
To: smithm4@georgetown.edu
CC: kilkennr@georgetown.edu
Subject: RE: Filing of memo with D.C. government to ask for corrections in IDEAA Findings before
Intake
Date: Wed, 22 Oct 2014 15:55:53 -0400

From: jslovinec16@hotmail.com
To: info@thehoya.com
CC: kilkennr@georgetown.edu
Subject: RE: Filing of memo with D.C. government to ask for corrections in IDEAA Findings before
Intake
Date: Tue, 21 Oct 2014 20:50:04 -0400

From: jslovinec16@hotmail.com
Date: Tue, 21 Oct 2014 13:20:37 -0400

From: jslovinec16@hotmail.com
To: jaf@georgetown.edu
CC: ohr@dc.gov
Subject: RE: Filing of memo with D.C. government to ask for corrections in IDEAA Findings before
Intake
Date: Tue, 21 Oct 2014 13:18:24 -0400

for a considered complaint is unrelated to Jay Gruber's use of Marisa Randazzo and continuation of her assignment is still in the agreement that conforms to most procedures in IDEAA Step 1, Mediation, without a formal signing session with anyone other than Mr. Smith.  Reasons include corrections issues in a barring order case where if Georgetown does not offer objective fact-finding, I could ask for an intake within a few days on discrimination mainly on a political affiliation issue and concealed personal appearance issues of anti-homeless discrimination: a compromise was reached after attempted denial of service or program participation of forbidding me to travel to campus for 2 years of March 21, 2014-March 21, 2016 after a Workforce Investment Act grant paid for my Georgetown Certificate in Project Management education.  It seems I could invoke employment issues at D.C. Office of Human Rights like creation of a hostile work environment or job search environment since Mr. Smith only agreed to permit my visits to Main Campus for job interviews only, as of last week he would not permit socializing for other purposes like foreign affairs events or learning about potential campus office employers, and Mr. Smith persists in allowing his documents to include unsubstantiated accusations of my disruption of campus that could adversely affect a background investigation of a job for me.  His writing indicates African-American discrimination against me, a white, in mentoring as a recipient of D.C. Dept. of Employment Services funds.

   Mr. Joseph Ferrara is respectfully notified I approach President deGioia in this e-mail since it would help Georgetown's reputation if he would order new fact-finding to comply with the stated goals of Georgetown's Director of Threat Assessment, Marisa Randazzo, in a website entry, "What is Threat Assessment?" where it calls for "objective fact-finding" and note it is wrong to have "yelling in an aggressive or threatening manner": Mr. Smith had a bias against me when Republican-leaning types imitated earlier disputes I had at American University on Margaret Spellings' schemes to cut off my financial aid during a 2005 deferment period.  Thank you. .

---

From: jslovinec16@hotmail.com
To: smithm4@georgetown.edu
CC: mer47@georgetown.edu
Subject: Confirmation of areas of agreement
Date: Wed, 15 Oct 2014 20:52:39 -0400


 This confirms for Michael Smith and Rosemary Kilkenny areas of agreement in IDEAA Findings with cc: to Marisa Randazzo. A White House report on the long-term unemployed will be discussed mostly with Erik Smulson and Lisa Brown among Mr. Smith's IDEAA Memo recipients. I accepted use of Marisa Randazzo as "primary point of contact with the University going forward" in his revised June 27, 2014 letter to me since I believe she cannot do this work alone without consulting with Mr. Durso's office. I accept that Georgetown on June 26 recognized my rights to access to School of Continuing Studies and Law School. I accepted Marisa is contact for visiting Main Campus for an interview.
On supportive services, I told Marisa I met with a DOES caseworker today yet no promises were specific on these supportive services in a Workforce Investment Council meeting minutes in 2013: tokens are promised only for WIA class attendance for sure, clothing - she does not know men's provider's name, and needs-based payments are respected yet uncertain.

Thanks.
I will ask Marisa on sending more items.,

Joe Slovinec
ALSO: If there is an intake, I will give you  at OHR copies of Notice of Findings by IDEAA and
Appeal: Please note today, Oct. 20, Mike Durso is at the Georgetown Office of Community
Engagement: Mr. Smith wrote in June 27, 2014 letter to me as cover sheet of IDEAA Findings:  "if
you are invited, to interview for a job on Main Campus, Dr. Randazzo will be able to facilitate your
participation in an interview."  and she has a goal "to serve as a resource for you in accessing
employment support services and other services in the area.": he has also called for identifying
D.C. supportive services.

October 20, 2014 - I thank Mr. Smith for work on the supportive services issue. Marisa helped in
giving me a notebook. However, even after talks with a D.C. Dept. of Employment Services
caseworker, we have not identified or agreed on a supplier of free men's business clothing to me
as a poverty case.
    President deGioia is responsible for hiring Project Managers where the profession calls for
accuracy and for supervising entities with respect for the U.S. Department of Labor with calls for
truthfulness.  In addition, IDEAA had a lack of respect for constitutional due process that the Law
School will find troubling and, even if Mr. Smith seemed fair on allowing campus visits for jobs, it is
not in Georgetown University's interests to allow the IDEAA Findings to stand as a final ruling with
malicious information that could unfairly damage me if there is a background investigation for a
job for me. I want to ask President deGioia  to review these issues and statements in an unsound
document Ms. Kilkenny approved without careful consideration or due diligence in an e-mail she
claimed she sent to the wrong e-mail address for me:
A. MS. KILKENNY IGNORED SIGNIFICANT EVIDENCE OF PARTISAN DISCRIMINATION, GROUNDS FOR
APPEAL
A1. MR. SMITH KNEW ABOUT STROUSE DEMOCRAT ISSUES AND REFUSED TO INVESTIGATE IT
    I, Joseph Slovinec, will try to make this document brief with emphasis on direct quotes.  On p.
7 of IDEAA Findings (all citations of Findings were from June 26, 2014 in a paragraph entitled "I.
Discrimination and Harassment Based on Political Affiliation and Disability", Mr. Smith quoted me
as saying on a cause of Georgetown Public Safety's barring order of me" (a) ..Mr. Slovinec
contends that he was not disruptive and was making a "polite visit..to the Hoya to deliver to T.M.
Gibbons-Neff a news release about Kevin Strouse, a Democratic candidate for Congress and
Georgetown veteran....c) IDEAA allows me to claim partisan harassment since a Republican
probably influenced Mr. Richardson to resent my polite delivery of a request to T.M. Gibbons-Neff
of the Hoya to write a news release on Kevin Strouse for Congress; No signs were posted
forbidding access and no rules broke."  I add the Hoya listed its address on the 4th Floor Leavey on
public Internet computers so there was no evidence it said the floor was totally private and
Officers Richardson and Ruiz were wrong to put the visit in the same category as criminal
trespassing since it was not. Mr. Smith did not have a fair investigation for both sides on wrote
with a bias on p. 16 of IDEAA Findings on my invited attendance to a Georgetown University
Student Veterans Association reception the same day, with a related right to attend it and enter
Leavey Center under Georgetown's Free Speech Policy, "IDEAA finds that regardless of whether
Mr. Slovinec was invited to attend the reception, his behavior while in the building was disruptive
enough to cause an employee to call GUPD". Mr. Smith's use of anonymous complaints with no

names of witnesses is an unconstitutional violation of due process. Mr. Smith's investigatory work
was DEFICIENT according to Georgetown policy since:
- There was no specific evidence or proof of disruption like interference with an office or talking
out of turn in the Georgetown Free Speech policy
- President deGioia is asked to overrule the barring decision or end it; or in the alternative, to
order new fact-finding since in my printout of IDEAA rules in "Faculty Handbook, IV. Other Policies
Governing Employment at Georgetown University, A. Affirmative Action Grievance Procedures" p.
6 permits "Questioning of a witness" and p. 7 says, "Both Complainant and Respondent may
present evidence and identify witnesses who can provide information relevant to the allegations. "
GROUNDS FOR APPEAL EXISTED under Step V on P. 8
"a) A material failure to follow these Grievance Procedures during the investigation.
b) Significant evidence was not considered, which would have altered the outcome of the
investigation."
Mr. Smith knew about partisan discrimination against J. Slovinec as Democrat and chose wrongly
to ignore it and wrongly place trust in a malicious caller with no evidence when the Human
Resources website says "behavior" in most of Marisa Randazzo's cases is linked to threats of
violence

b. ERRONEOUS OR FALSE STATEMENT OF MR. SMITH ON WIA PURPOSE ON P. 15 Mr. Smith wrote:
'IDEAA finds that Mr. Slovinec's claims and inferences that the University has either an obligation
to assist with his career/employment development or job searches to be inaccurate. The WIA
does not obligate the University as an ETP to do so" Please see 20 Code of Federal Regulations
666.100 that expectations of federal Workforce Investment Act recipients are: gaining credentials
and then obtaining hiring of participant with recording of earnings levels and months of job
retention: I ask the D.C. Office of Human Rights to consult with the Workforce Investment Council
which has similar information: Georgetown was expected to do its best to help me search for
work. Mr. Smith's viewpoints are directly opposed to the Obama-Biden Administration in its July
2014 report Ready to Work on p. 8: "Programs should also seek employer commitments to the
program through the provision of work-based learning opportunities and/or commitments to hire
program graduates."
AMENDED OCTOBER 21: It appears evidence is great enough for me to ask President deGioia to
order both Ms. Kilkenny and Mr. Smith to make a correction in this statement that indicates their
lack of proper fact-finding was bad for Georgetown's purposes and federal relations. I found
documents online that the D.C. Office of Human Rights could easily obtain from Allison Gerber, a
past Executive Director of the Workforce Investment Council: the July 9, 2013 minutes on Eligible
Training Providers says the D.C. Workforce Investment Act Council and government "requires
training providers to meet minimum performance levels for:
1. Program Completion
2. Entered Employment
3. Employment Retention
4. Employment in Training-Related Occupation
5. Average Wages."
Allison also said that if these standards were not met, an Eligible Training Provider could be
removed from eligibility for one year. Georgetown successfully avoided this scrutiny by refusing
to take new Workforce Investment Act students after March 1, 2011 because Mayor Gray reduced
the WIA grant amount from $8000 to $4000 yet Mr. Smith did not understand Georgetown still

had certain obligations under D.C. law for my program that ended in February 2011 including truthfulness on its purposes and his questionable statements on trying to limit program completers to access to campus as much as it possibly could when it could become a detriment to getting hired.

C. BAD DISAGREEMENT ON MENTORING On p. 15, Mr. Smith wrote: "IDEAA finds that Mr. Slovinec's claim that the University should have mentored him as he purports Ms. Greenan did for other DOES participants to be without merit": I sued DOES because black caseworkers discriminated against me as a white with delays in program approval and poorer quality of advising and use of job fairs and an October 2010 Georgetown website indicates Ward 7 desired favoritism: it was true when Mr. Smith quoted me on p. 8 as saying: "Linda Greenan ..discriminated in favor of Project Empowerment recipients who got jobs after they got a mentoring program with Art History Professor John Morrell with their D.C. Dept. of Employment Services grant: I got a D.C. Dept. of Employment Services Workforce Investment Act grant and did not receive a mentoring program; this unfairly reduces my chances with Human Resources" who offered interview-training workshops to Project Empowerment that I did not get.

D. Mr. Smith tried to claim I said I had a disability when I made it clear on p. 9 "Ms. Lindsay, a D.C. bureaucrat ..made an erroneous statement I was disabled"

E. There is evidence Mr. Smith discriminated against me unjustly under EEOC standards when he claimed for every Georgetown job I applied when I "did not have the credentials necessary to be qualified for the job." I only have time to go over 1 of 3 jobs "Program Coordinator position in McCourt School of Public Policy" on p. 6 where the job description only requires a B.A. and 1 year of work experience and I was rejected when I had experience in excess of it with a B.A., two Master's Degrees, 6 years of related work experience at the Cook County Circuit Court, and directly related 1985-1986 experience in Child Support Enforcement at Cook County State's Attorney Richard M. Daley's office

D. CORRECTION ON DISABILITY

E. EVIDENCE MR. SMITH DISCRIMINATED ACCORDING TO EEOC STANDARDS ON MY PROPER CREDENTIALS FOR MCCOURT SCHOOL PROJECT COORDINATOR


F. PRESIDENT DEGIOIA IS ASKED TO REVIEW ANY WORK OF MARISA RANDAZZO AND JAY GRUBER'S PUBLIC SAFETY UNIT IN MY REQUEST TO GO OVER DISCREPANCY BETWEEN MR. SMITH'S WRITING AND LT. POWELL'S TESTIMONY

Mr. Smith appears to repeat falsified accusations that I disrupted events at Michael Schaub's Career Center when I never attended events there if he said "No" or against his wishes on p. 6: "While Mr. Slovinec no longer had any official affiliation with the University, he frequently attended events on the Main Campus and continued to make efforts to attend Career Center sponsored events, some of which he was not invited to. At some of these events, GUPD was called by event attendees to intervene." We should all oppose propaganda and Mr. Smith is wrongly using negative labels without evidence like tactics of an opposing Ward 7 pro-Gray campaign person against my choice for Mayor, Tommy Wells, or a Republican. His examples on pp. 5-6 include: a gay Lavender graduation that was not sponsored by the Career Center, e-mails from Michael Schaub that did not indicate I actually attended his event in 2013, and a McCourt School career panel event in October 2013 that was not sponsored by the Career Center. Lt. Powell's testimony from Public Safety of May 15, 2014 does not use the term Career Center so it was not involved in these lies yet it misuses the term "disruptive" in violation of Georgetown's Free Speech

https://blu178.mail.live.com/mail/RteFrameResources.aspx?n=17.4.8225.6000&...   Page 7 of 7

policy with claims I disrupted events with no dates, times, or names of witnesses other than an unnamed employee on March 21, 2014.

I lack time to discuss John Carr, Melanne Verveer, their jobs and WIA issues today.  Thanks.

NEXT PAGE
PART B: IDEAA-NOTICE PFANDINGS
P. 15, 16-20



*Institutional Diversity, Equity and Affirmative Action*
*CONFIDENTIAL*

**NOTICE OF FINDINGS**

| | |
|---|---|
| COMPLAINANT: | Joseph Slovinec, Job Applicant and Former School of Continuing Studies Non-degree Participant |
| RESPONDENT: | Georgetown University Police Department |
| ALLEGED VIOLATION: | Political Discrimination/Harassment, Disability Discrimination/Harassment, and Retaliation |
| DATE OF COMPLAINT: | April 4, 2014 |
| DATE OF RELEASE: | June 26, 2014 |

**Introduction and Executive Summary**

On April 4, 2014, Mr. Joseph Slovinec ("Complainant" or Mr. Slovinec"), a former participant in the School of Continuing Studies' non-degree certificate program in Project Management and a current applicant for jobs at Georgetown University filed a complaint ("Complaint") with the Office of Institutional Diversity, Equity, and Affirmative Action ("IDEAA") and named the Georgetown University Police Department ("GUPD") and two of its Officers – David Ruiz and Paul Richardson – as respondents ("Respondents" or "GUPD Officers"). Mr. Slovinec claims that GUPD subjected him to discrimination and harassment based on political affiliation and disability when it issued a March 21, 2014 order barring Mr. Slovinec from campus for two years.

Additionally, Mr. Slovinec intimates that he may have been subjected to retaliation which resulted in differential treatment because Linda Greenan, the former Associate Vice President for External Relations, provided mentoring and other supportive services to other job seekers, but not to Mr. Slovinec, as a Workforce Investment Act ("WIA") recipient.

Mr. Slovinec's allegations implicate the following University policies:

1. The Equal Opportunity and Non-Discrimination in Employment Policy
2. The Policy Statement on Harassment
3. The Policy on Non-Retaliation

As described more fully below, based on a thorough review of all the evidence, IDEAA makes the following findings:

1. GUPD and its Officers did not violate the University's Equal Opportunity and Non-Discrimination in Employment Policy.  GUPD denied the claim and IDEAA did not find sufficient evidence that Mr. Slovinec was discriminated against based on his political affiliation or disability. Moreover, IDEAA did not find a violation of the Policy on Equal Opportunity and Non-Discrimination in Employment because Mr. Slovinec did not establish facts sufficient to conclude that he was treated less favorably than any other person who has presented as suspicious or disruptive while visiting the University.

2. GUPD and its Officers did not violate the University's Policy Statement on Harassment.  GUPD denied the claim and IDEAA did not find sufficient evidence that Mr. Slovinec was subjected to harassing conduct that adversely affected his employment opportunities.

3. Mr. Slovinec's claim of retaliation relates to several matters from 2010, 2011, and 2012 and as such, exceeds the 180 days for a complainant to file a claim of discrimination or harassment with the University, per IDEAA's Grievance Procedures to Investigate Allegations of Discrimination or Harassment. As such, IDEAA finds those claims to be dated and time-barred.  Even so, Mr. Slovinec does not provide – nor can IDEAA find – any facts supporting his conclusory claim of retaliation.

**Review Process**

IDEAA received and reviewed Mr. Slovinec's April 4, 2014 written complaint, GUPD's May 15, 2014 response, and Mr. Slovinec's May 24, 2014 rebuttal. IDEAA also reviewed documentary evidence provided by both parties such as Mr. Slovinec's extensive emails from 2011 to the present and several GUPD police reports. Neither party provided any witnesses to the March 2014 event or previous incidents of purported harassment or discrimination. IDEAA also interviewed representatives from the School of Continuing Studies and Human Resources to obtain information about the background and context of the SCS program, the job application process, and the WIA.

**Summary of Facts**

_Background Information_

In 2010, Mr. Slovinec, as an unemployed and homeless person, applied for and was accepted as a Workforce Investment Act recipient.[1] As a result, the District of Columbia Department of Employment Services ("DOES") assigned Mr. Slovinec a job caseworker, who would provide guidance and assistance in career and employment services. The DOES provides "One Stop" service centers to WIA participants throughout the city. Each center provides career counseling, resume assistance, job placement, vocational training, access to online services, information about local and national labor markets and unemployment insurance.[2]

In the mid-2000's, Georgetown, through its Center for Continuing and Professional Education ("CCPE") in the School of Continuing Studies ("SCS"), and in collaboration with DOES, agreed to be an Eligible Training Provider ("ETP") for WIA recipients. Under this arrangement, DOES would identify WIA recipients who could attend one of four (4) CCPE's non-degree certificate programs: Project Management, Financial Planning, Paralegal Studies, and Non-profit Management. CCPE, in turn, agreed to assist recipients with course registration, to ensure accurate program and course information (dates of the programs, tuition, location, and the like) was posted on the

---

[1] The federal Workforce Investment Act ("WIA") became effective in 2000 and provides a range of workforce development activities administered through State and local employment offices and area Workforce Investment Boards or Councils. Those activities provide employment and training services designed to benefit employers, dislocated workers, and low-income youth.

[2] American Job Centers http://does.dc.gov/node/159972

DOES website, and to assist recipients with successful completion of their respective certificate programs. According to representatives from the School of Continuing Studies' CCPE, it was under no obligation to provide career services or employment guidance beyond a recipient's completion of the certificate program.

*Mr. Slovinec's Interactions with CCPE and Georgetown University*

There is no dispute that Mr. Slovinec attended and completed the CCPE certificate program in Project Management from January 21- February 12, 2011. In mid-2011, CCPE voluntarily withdrew as an ETP because of administrative and policy changes at DOES. Mr. Slovinec was made aware of these changes by his DOES case worker.

After completing the Project Management certificate program, Mr. Slovinec approached staff members of CCPE numerous times requesting financial support to enroll in additional certificate programs. However, CCPE does not provide financial assistance of any kind for students enrolled in non-degree/non-credit professional certificate programs. In response to Mr. Slovinec's insisting that the CCPE needed to assist him in finding additional financial assistance for another CCPE certificate program, Edwin Schmierer, Associate Dean with CCPE agreed to meet with Mr. Slovinec on June 8, 2012. As a follow-up, Mr. Schmierer sent Mr. Slovinec a summary:

> 1. "The SCS does not have a career advisory department or career counselors, but you can apply to any positions posted to the CCPE LinkedIn group that you find appropriate for your experience and interests. CCPE does not control the hiring requirements for those positions as they are determined by the employer or recruiter that posts the position.

> 2. You can apply to any Georgetown University position you find appropriate for your experience and interests. You will have to abide by Georgetown University's standard hiring process as all prospective candidates are required to do.

> 3. Georgetown University does not offer scholarships or grants for non-credit professional certificate programs or courses, nor does it offer free courses. You are free to seek funding from sources external to Georgetown University. This is the extent of the resources available to you".[3]

---

[3] Mr. Schmierer June 11, 2012 email to Mr. Slovinec, subject "Re: PMP Test Review"

.

As indicated in Dean Schmierer's email, while the CCPE was not obligated to provide WIA recipients any career or employment services, it created a "LinkedIn" website for all of the CCPE participants who had successfully completed their respective certificate programs.[4]  Dean Schmierer provided the content for the LinkedIn site and posted upcoming University events and potential job and networking opportunities for all members who had completed the CCPE program.

In addition to the CCPE LinkedIn site, the University's Career Center allowed Mr. Slovinec to use its services informally for a short period of time after he completed his program.  However, in 2012, that arrangement was discontinued for programmatic and administrative reasons and Dr. Michael Schaub, Executive Director of the Career Center, informed Mr. Slovinec of that change.[5]

While Mr. Slovinec no longer had any official affiliation with the University, he frequently attended events on the Main Campus and continued to make efforts to attend Career Center sponsored events, some of which he was not invited to.  At some of those events, GUPD was called by event attendees to intervene.

As an example, in April 2012, GUPD received a report of a "suspicious person/non Georgetown University white male in the Copley Formal Lounge at an event at that location not invited." GUPD asked Mr. Slovinec to leave the event and he complied.[6]

In a February 15, 2013 email to Dr. Schaub, Mr. Slovinec asserted:

> "I believe the Career Center still lists that it helps alumni within 3 years of graduation.  Since the Career Center provided limited services to me in the past and I got messages from Mike Schaub, I hope it is clear we are still within 3 years of my actual class completion of my Georgetown Certificate in Project Management in February 2011".

In a February 20, 2013 email response, Dr. Schaub responded to Mr. Slovinec:

---

[4] The Georgetown University Center for Continuing & Professional Education offers professional certificate programs and custom education in business, finance, marketing, law, and leadership for business and government managers, career changers, and entrepreneurs. Our portfolio of non-credit professional certificate programs and courses provides professionals with a targeted and flexible means to advance, change, or refocus careers and position organizations for future growth. Our LinkedIn group offers a means for current students and alums to connect, network, and advance.
[5] January 9, 2012 email regarding "Internship"- "Mr. Slovinec, Thank you for your email, and congratulations on receiving an interview. Given that you have completed your certificate training, the Career Education Center services are no longer available to you. Please reach out directly to Jubilee USA with questions regarding their invitation for an interview."
[6] April 30, 2012 GUPD Incident Report

"The Government and Nonprofit Career Expo is not open to individuals who have completed a certificate program at Georgetown University. Certificate recipients are not included in the alumni classification to which you refer. Additionally, individuals who have completed a certificate program are not eligible to participate in our government week events. Therefore, you are not eligible to participate in the government week events or the Expo".

On another occasion, in October 2013, GUPD received a report from the McCourt School of Public Policy asking GUPD to ensure that Mr. Slovinec did not attend an upcoming event because while Mr. Slovinec presented himself as "an alumni," he did not have an affiliation with the McCourt School, and his "conduct is inappropriate for these events" (a panel member previously found Mr. Slovinec's conduct, including attempts to hand out resumes as offensive).[7]

In March 2014, GUPD received a report from an employee on the fourth floor of the Leavey Center of a suspicious person in the area with no reason to be there. GUPD identified the individual as Mr. Slovinec and – as more fully explained in the GUPD statement below – GUPD issued an order barring Mr. Slovinec from campus for two years. Chief Jay Gruber reviewed Mr. Slovinec's request to lift the barring order and on March 24, 2014, informed him: "After reviewing the information surrounding this barring and reviewing your prior contact history with the GUPD, I am upholding the Barring Notice."

Since 2011, Mr. Slovinec has also applied for approximately 75 positions at Georgetown University and at least one temporary position with the University's HoyaStaffing temporary job placement agency. Since generally hiring departments receive applicants' resumes directly, the University's Department of Human Resources was not able to confirm if Mr. Slovinec has been a finalist who has been interviewed for any of the positions.

In March 2014, Mr. Slovinec applied for three positions – Program Director, Initiative on Catholic Social Thought and Public Life; Program Coordinator, International Council on Women's Business Leadership; and a Program Coordinator position in the McCourt School of Public Policy. While the Department of Human Resources could not confirm

---

[7] October 30, 2013 GUPD Incident Report

whether Mr. Slovinec was a finalist for any of these positions, a review of his cover letter and resume indicated that he was not a viable candidate for the positions.

**Mr. Slovinec's Allegations:**

In Mr. Slovinec's April 4, 2014 complaint, he specifically claims that GUPD Officers harassed and discriminated against him based on political affiliation and disability, and that a university official retaliated against him.  His claims are set forth below.

I. Discrimination and Harassment Based on Political Affiliation and Disability

> a) "It appears I can say Mr. Richardson has Bush-Republican leaning views and harassed me for political reasons according to IDEAA criteria."[8]  Mr. Slovinec contends that he was not disruptive and was making a "polite visit . . . to the Hoya to deliver to T. M. Gibbons-Neff a news release about Kevin Strouse, a Democratic candidate for Congress and Georgetown veteran."[9]

> b) "The main purpose of the barring order was to stop me from applying for jobs at Georgetown University Human Resources."[10]

> c) "IDEAA allows me to claim partisan harassment since a Republican probably influenced Mr. Richardson to resent my polite delivery of a request to T. M. Gibbons-Neff of the Hoya to write a news release on Kevin Strouse for Congress: no signs were posted forbidding access and no rules broke."[11]

> d) "If Mr. Richardson issued a barring order based on a false report of my disability, Chief Gruber is responsibility to lift it."[12]

II. Retaliation

> a) Mr. Slovinec contends that as a recipient of the WIA which paid for the CCPE Project Management certificate, he had "a legal protection to apply for work after the Workforce Investment Act grant paid for my Georgetown Certificate in Project Management" and he believes "retaliation could have happened when I said the WIA grant was specifically for homeless residents like myself and I did not

---

[8] Slovinec April 3, 2014 email to IDEAA.
[9] Ibid.
[10] Ibid
[11] Ibid
[12] Ibid

receive good career advice in a program mostly for wealthier people in Virginia."[13]

b) In the same email, Mr. Slovinec contends that "Linda Greenan, AVP for External Relations, showed differential treatment because she discriminated in favor of Project Empowerment recipients who got jobs after they got a mentoring program with Art History Professor John Morrell with their DC Dept. of Employment Services Grant: I got a DC Dept. of Employment Services Workforce Investment Act grant and did not receive a mentoring program; this unfairly reduces my chances with Human Resources."

**GUPD's response to the allegations:**

GUPD and its officers deny subjecting Mr. Slovinec to discrimination or harassment based on political affiliation, disability, or any other factor. Additionally, GUPD maintains that Mr. Slovinec was barred from campus not to prevent him from seeking employment with the University, but rather because of a history of complaints related to his disruptive behavior on campus.

GUPD states that on March 21, 2014 they received a report from an employee on the fourth floor of the Leavey Center of a suspicious person in the area with no reason to be there. When GUPD Officers arrived, they located Mr. Slovinec, who fit the physical description of the suspect. The officers approached Mr. Slovinec, who indicated that he had had previous contact with GUPD. As a result, the responding GUPD officers ran a search of Mr. Slovinec's name and the GUPD results indicated that Mr. Slovinec had a history of attending Main Campus events to which he had not been invited. During some of those events, Mr. Slovinec was disruptive. In the course of questioning Mr. Slovinec, GUPD Officers asked Mr. Slovinec if he was affiliated with the University and he informed them that he was not.

Based upon Mr. Slovinec's previous history of attending closed University events without invitation and having no affiliation with the University, the GUPD Officers issued the barring order.

According to GUPD, it was Mr. Slovinec who volunteered that he was a Democrat and claimed that his previous encounters with GUPD Officers were because Republicans at Georgetown University have filed complaints against him. Neither Officer Richardson

---

[13] Ibid

nor Officer Ruiz addressed Mr. Slovinec's political affiliation nor made comments in response to Mr. Slovinec's claims that he was being targeted based on his political beliefs.

Mr. Slovinec made no reference to a disability in the course of the incident and as such, GUPD denies that Mr. Slovinec's disability was a factor in issuing the barring order.

In summary, GUPD stated that the decision to issue the barring order was based on non-discriminatory factors: Mr. Slovinec had no affiliation with the University, he had no lawful reason to be on campus, and he had a history of improperly attending closed events on campus, which resulted in multiple calls to GUPD.

**Mr. Slovinec's rebuttal:**

Mr. Slovinec provided several email responses; one dated May 20 and three dated May 24, 2014. Mr. Slovinec reiterated that since the University had accepted the Workforce Investment Act grant for the purpose of aiding him with a job search, it has an obligation to allow him to seek employment opportunities at Georgetown. Mr. Slovinec contends the University's Free Speech Policy protected Professor Barbara Mujica's right to invite him to attend the March 21, 2014 Student Veteran's reception.[14] Mr. Slovinec goes on to make additional claims and accusations unrelated to his original complaint:

- "The Public Safety office seems hostile to gay rights both due to the Georgetown Veterans Troops Out event in Nov. 2013 and my attendance at the gay Lavender graduation event about April 30, 2012: I tried to e-mail or visit the gay center to ask if I could attend and no one was in, a Hispanic guard seemed halfway-serious when he said someone objected to my attendance and demanded that I leave."[15]

- Mr. Slovinec questioned whether GUPD had "contact with Ms. Lindsay, a DC bureaucrat who made an erroneous statement I was disabled."

---

[14] Dr. Mujica Co-chairs the Veterans Support Team Committee and serves as the Faculty Advisor to the GU Student Veterans Association. GUSVA hosted a March 21, 2014 reception in the Leavey Center Ballroom to honor student Veterans.

[15] In IDEAA's opinion, Mr. Slovinec's comment in his rebuttal regarding gay rights does not rise to the level of an official claim of discrimination under Georgetown University policies.

legitimate non-discriminatory reasons; namely, that he did not have the credentials necessary to be qualified for the job. IDEAA finds – and Mr. Slovinec admits – that despite applying for more than 75 jobs at Georgetown University, he has not been successful in securing a job interview.[16] IDEAA independently reviewed Mr. Slovinec's recent cover letter and resume for a University position and found them to be disjointed, erratic, and rambling. As such, it would be difficult for hiring departments to consider Mr. Slovinec as a viable candidate. Finally, Mr. Slovinec has not shown that the University's non-discriminatory reason for not hiring him was pretextual.

   II.   Harassment

      a. Policy

It is the policy of Georgetown University to prohibit harassment on the basis of an applicant's political affiliation or disability. Harassment is defined as "verbal or physical conduct that denigrates or shows hostility or aversion to an individual because of a Protected Category, when such conduct has the purposed or effect of: unreasonably interfering with an individual or third party's work performance; creating an intimidating, hostile, or offensive work environment; or otherwise adversely affecting an individual's employment opportunities."

As noted in the policy, examples of harassment include but are not limited to: "verbal abuse or ridicule, including slurs, epithets, and stereotyping, offensive jokes, and comments, threatening, intimidating, or hostile acts, and displaying or distributing offensive materials, writings, graffiti, or pictures."

In determining whether harassment has occurred, IDEAA applies the preponderance of the evidence standard and determines whether the conduct or behavior is patently offensive in a single incident or sufficiently severe and pervasive to have adversely affected the terms and conditions of employment or learning, to have affected or interfered with an individual's work or educational performance, or to have created an intimidating, hostile, or offensive environment for work or learning.

---

[16] May 20, 2014 email rebuttal to IDEAA "...after 76 job applications with no interviews".

b. Findings

Based on IDEAA's review of all the evidence, including documentary evidence from both parties, IDEAA finds that the preponderance of the evidence does not support the claim that GUPD engaged in discrimination related to Mr. Slovinec's political affiliation or disability.  As a result, IDEAA finds that GUPD did not engage in behavior that violated the University's Policy on Equal Opportunity and Non-Discrimination in Employment.

GUPD denied Mr. Slovinec's claims and provided a legitimate and non-discriminatory reason for issuing the barring order. IDEAA finds that Chief Gruber objectively reviewed and provided non-discriminatory reasons to uphold the barring order until March 21, 2016 – namely, that Mr. Slovinec's actions were disruptive to "the academic mission of the University." Additionally, IDEAA did not find and Mr. Slovinec did not provide sufficient evidence that he was treated less favorably than other person who has presented as suspicious or disruptive while visiting the University.

Supporting that conclusion, IDEAA finds that while Mr. Slovinec has attended several University events and receptions without incident, there have been multiple occasions where Mr. Slovinec's behavior was found to be a disturbance. There was a complaint in 2012 and another complaint in the latter half of 2013 and the more recent incident in March 2014, when Mr. Slovinec was found in the Leavey Center after having visited the student newspaper, "The Hoya."

Mr. Slovinec asserts that he was on campus at the invitation of Dr. Barbara Mujica for the Student Veterans reception and decided to visit the Hoya to drop-off materials. IDEAA finds that regardless of whether Mr. Slovinec was invited to attend the reception, his behavior while in the building was disruptive enough to cause an employee to call GUPD and report him as suspicious.

Mr. Slovinec has asserted that since 2011, he has frequented several University networking events to seek University employment.  IDEAA finds that the University had no obligation to permit Mr. Slovinec on campus for these purposes.  Mr. Slovinec was a recipient of a WIA grant and as a result received funding to attend the CCPE Project Management certificate program.  Once Mr. Slovinec completed the non-degree program, the University had no further obligation to allow Mr. Slovinec on campus for networking or other events.

Moreover, IDEAA finds that Mr. Slovinec has not been discriminated against in any way that would affect his applications for employment with Georgetown.  First, Mr. Slovinec has not demonstrated that he applied to and was rejected for a job that he was qualified for.  Further, Mr. Slovinec's failure to attain employment is due to



### *GEORGETOWN UNIVERSITY*

**Department** *of* **Public Safety**
*University Police*

not invited to, and being disruptive at these events.[1] Officer Ruiz asked Mr. Slovenic if he was affiliated with the University, and Mr. Slovenic replied that he was not.

Based on Mr. Slovenic's previous history of displaying disruptive behavior at closed events without invitation, and having no affiliation with the University, Officer Richardson and Officer Ruiz decided to issue a barring notice to Mr. Slovenic[2].

Additionally, during his encounter with Officer Richardson and Officer Ruiz, Mr. Slovenic volunteered that he was a democrat, and that his previous encounters with GUPD officers were because Republicans at Georgetown University file complaints against him. Officer Richardson and Officer Ruiz never broached the subject of political affiliation nor made comments in response to Mr. Slovenic's statements that would indicate he was being targeted based solely on his political beliefs.

GUPD has no knowledge of Mr. Slovenic's history with American University and denies that such information had any bearing on the decision to issue Mr. Slovenic a barring notice, as he so alleges.

Additionally, Officer Richardson recalled that Mr. Slovenic complimented him on being polite and apologized for the fact that he would be filing a complaint against the officers.

In summary, Mr. Slovenic was barred from campus because he was not affiliated with the University, had no lawful reason to be on campus, and had a history of disrupting events on campus. The decision to bar Mr. Slovenic from campus was in no way motivated by his political beliefs as a supporter of the Democratic Party.

---

[1] GUPDIR # 12-001179 filed 4/30/12 and GUPDIR#13-002110 filed 10/31/2013
[2] The barring notice informs individuals who are trespassing on private property that should they return to campus, they will be arrested for violation of DC Code Title 22 Chapter 33, Unlawful Entry onto Property.

b. Findings

Based on IDEAA's review of all the evidence, including documentary evidence from both parties, IDEAA finds that the preponderance of the evidence does not support the claim that GUPD engaged in harassment related to Mr. Slovinec's political affiliation or disability. Mr. Slovinec did not provide and IDEAA did not find any evidence to suggest that GUPD or its officers engaged in any verbal or physical conduct that denigrated or showed hostility or aversion to Mr. Slovinec because of his political affiliation or disability. As a result, IDEAA finds that GUPD did not engage in behavior that violated the University's Policy on Harassment.

As noted in the findings Section I.a., above, GUPD denied Mr. Slovinec's claims and provided a legitimate and non-discriminatory reason for the barring order.

III.   Retaliation

a.   Policy

The Policy Statement on Harassment also prohibits retaliation. Inherent within the University's Policy Statement on Harassment, is the *Principle of Non-Retaliation*, which states in pertinent part:

> "This policy prohibits retaliation, harassment, or other adverse action against an individual for making a complaint in good faith, assisting in an investigation, opposing harassment or otherwise exercising rights protected by law. It also prohibits taking any adverse academic or employment related action against an individual based on an unsubstantiated allegation or rumor of harassment."

In determining whether GUPD, Ms. Greenan, or any other University representative subjected Mr. Slovinec to retaliation, IDEAA considers the following: Whether as an applicant, Mr. Slovinec: opposed any unlawful employment practice, has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing; or has been discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment *because of* lawful acts done by the employee.

b.   Findings

As an initial matter, Mr. Slovinec did not identify the protected activity that he engaged in that is a pre-requisite for a claim of retaliation. This is the first time IDEAA is aware that he raised an allegation of discrimination or harassment by Georgetown. As such, there can be no retaliation if Mr. Slovinec did not participate in a prior protected activity. Furthermore, to the extent Mr. Slovinec claims that he was retaliated against by Ms. Linda Greenan in 2011 and 2012, the retaliation complaint was filed beyond the 180 day period for a complainant to file a claim, per IDEAA's Grievance Procedures to Investigate Allegations of Discrimination or Harassment. As such, IDEAA finds those claims to be dated and time-barred.

Notwithstanding the untimeliness of the complaint, Mr. Slovinec provides no facts to substantiate his conclusory claim, nor did IDEAA find any evidence to support a claim of retaliation. IDEAA finds that Mr. Slovinec did not engage in any protected activity and did not suffer any adverse action as an applicant.

**Conclusion:**

IDEAA makes the following findings:

1. GUPD did not violate the University's Equal Employment and Non-Discrimination in Employment Policy. GUPD denied the claims and IDEAA did not find any evidence that Mr. Slovinec was discriminated against based on political affiliation or disability.

2. GUPD did not violate the University's Policy on Harassment. GUPD denied the claim and IDEAA did not find sufficient evidence that Mr. Slovinec was subjected to harassing conduct that adversely affected his employment opportunities.

3. Mr. Slovinec's claim of retaliation fails for lack of engaging in a protected activity. Furthermore, Mr. Slovinec's retaliation claim relates to matters from 2011, 2012 and as such, exceeds the 180 days for a complainant to file a claim of discrimination or harassment with the University, per IDEAA's Grievance Procedures to Investigate Allegations of Discrimination or Harassment. As such, IDEAA finds those claims to be dated and time-barred. Moreover, Mr. Slovinec does not provide – nor can IDEAA find – any facts supporting his conclusory claim of retaliation.

IDEAA finds that Mr. Slovinec's claims and inferences that the University has either an obligation to assist with his career/employment development or job searches to be inaccurate. The WIA does not obligate the University as an ETP to do so. Moreover, IDEAA finds that Mr. Slovinec's claim that the University should have mentored him as he purports Ms. Greenan did for other DOES participants to be without merit. Georgetown provides certain career development and job search advice to program students, but it does not provide the services Mr. Slovinec requests to any student. Therefore, he was treated the same as all similarly situated students.

I commend Mr. Slovinec for completing the Certificate Program in Program Management in 2011 and for his tenacity in seeking gainful employment. The University wishes to ensure that Mr. Slovinec receives the appropriate DC City services that can help support him in his ongoing employment search. In this regard, Dr. Marisa Randazzo, Director of the University's Threat Assessment Team has agreed to be the University's sole point of contact for Mr. Slovinec to assist with identifying and reconnecting with DC supportive services. Finally, I would strongly encourage Mr. Slovinec to reconnect with DOES's "One Stop" Centers and a caseworker to refocus his career and employment efforts and opportunities.

Respectfully submitted,

Michael W. Smith, Director

CC:    Erik Smulson, Vice President Public Affairs

        Jay Gruber, Chief, GUPD

        Marisa Randazzo, Ph. D. Director of Threat Assessment

        Lisa Brown, Vice President & General Counsel

        Rosemary Kilkenny, VP Diversity & Equity



### GEORGETOWN UNIVERSITY

**Department of Public Safety**
*University Police*

Date:  May 15ᵗʰ, 2014

To:  Director Michael Smith

From:  Lt. Andrew Powell

Re:  Response to Mr. Joseph Slovinec's Discrimination Complaint

On behalf of Chief Jay Gruber, Officer Paul Richardson, Officer David Ruiz, and the Georgetown University Police Department, please accept our response to Mr. Joseph Slovinec's complaint, filed on April 3, 2014. The Georgetown University Police Department and its officers deny that it subjected Mr. Slovinec to discrimination based on political affiliation, or in any other form. The Department maintains that Mr. Slovinec was barred from campus after a series of complaints related to his disruptive behavior. Mr. Slovinec was not barred based on his political viewpoints, and was not barred to prevent him from seeking employment with the University.

* out of 1 inpblin*
*rc.*

On March 21ˢᵗ, 2014 an employee on the fourth floor of the Leavey Center reported a suspicious person in the hallway and stated that he did not have a reason to be in that area. Officers responded to the Leavey Center but were unable to locate the individual. Approximately two hours later, Officer Paul Richardson and Officer David Ruiz observed an individual matching the description of the earlier complaint. They approached the individual and identified him as Joseph Slovenic. The officer's contact with Mr. Slovenic was based on the fact that he matched the physical description of the earlier complaint. During his encounter with Officer Richardson and Officer Ruiz. Mr. Slovenic volunteered information to the officers that he had been contacted by our department on previous occasions. With that knowledge, Officer Richardson requested that GUPD Communications Officer Muwallif run a search on Mr. Slovenic's name. This search indicated that Mr. Slovenic had a history of attending events on campus he was

*MAYBE*
*SUMMARY*
*review??*



| 20131156-H | FT | Job Category: Public Policy<br>Job Category: Program / Project Management<br><br>Program Director, Initiative on Catholic Social Thought and Public Life,<br>Job Category: Program / Project Management | 11-21-2013 |

**Start a New Search**

https://jobs.georgetown.e...ajob...st.php

## Open Positions At Georgetown University

**Job Category: Program / Project Management**
**Total Vacant Positions: 12**

Click on a Job Title for the Job Description and to apply.

| Job Number | Full/Part Time | Position Title | Date Posted |
|---|---|---|---|
| 20141115-Q | FT | Program Coordinator, MHSA, Job Category: Program / Project Management | 06-18-2014 |
| 20131874-Q | FT | Graduate Program Coordinator, Online Education, Job Category: Program / Project Management | 06-17-2014 |
| 20141116-Q | FT | Program Coordinator, Job Category: Program / Project Management | 06-13-2014 |
| 20141117-Q | FT | Program Coordinator, Job Category: Program / Project Management | 06-13-2014 |
| 20141097-D | FT | Program Coordinator, Pluralism Project, Job Category: Program / Project Management | 06-10-2014 |
| 20141088-Q | FT | Regulatory Affairs Manager/Director, Job Category: Program / Project Management | 06-09-2014 |
| 20141046-H | FT | Manager of Special Projects, Job Category: Program / Project Management, Job Category: Administrative / Support | 05-23-2014 |
| 20140880-D | FT | Assistant Director, Executive Degree Program Management, Job Category: Program / Project Management | 05-21-2014 |
| 20140979-R | FT | Program Attorney, Job Category: Program / Project Management | 05-16-2014 |
| 20140972-D | FT | Events Planner, Job Category: Administrative / Support, Job Category: Program / Project Management | 05-14-2014 |
| 20140276-D | FT | Associate Director, MSB Center for Business and Public Policy, | 02-04-2014 |

'2.georgetown.edu/hr/employment_services/joblist/job_description.c... Page 1 o

2 JOB DESCRIPTIONS- WEEK N 9/22

**Georgetown**

### SUMMARY OF JOB DESCRIPTION

| | |
|---|---|
| Job Number: | 2014-0352H |
| Job Title: | Project Coordinator |
| Department: | MSPP-Center for Juvenile Justice |
| Grade/Level: | - - (PT 25 hrs/wk) |
| Date Posted: | February 20, 2014 |

**Duties And Responsibilities & Minimum Requirements:**

The Center for Juvenile Justice Reform (CJJR) in the Georgetown McCourt School of Public Policy is seeking a part time project coordinator to start immediately. The individual selected for this position will be responsible for three areas of work:

(1) Coordinating day-to-day activities involved in the implementation of the Juvenile Justice System Improvement Project. The Juvenile Justice System Improvement Project is designed to help states improve outcomes for juvenile offenders by better translating knowledge on "what works" into everyday practice and policy. Job responsibilities include producing written materials, tracking progress, processing invoices and travel reimbursements, participating in phone calls with sub-contractors and others regarding project progress and challenges, and more.

(2) The project coordinator will also assist with the center's fundraising efforts. This position will involve researching affiliates, colleagues, appointees, and those otherwise connected to a well-respected former government leader to build a database of potential fundraising targets

(3) The project coordinator will assist with our Juvenile Justice Leadership Network and Public Information Officer Learning Collaborative. These two projects bring together leaders from juvenile justice and child welfare agencies to promote peer-to-peer learning and leadership development. The project coordinator will help set up webinars, conduct research on juvenile justice and child welfare topics, and build collaborative wikis/websites (No web design experience is needed)

The ideal candidate will have a strong interest in issues affecting children and youth. The selected candidate is required to have at least a bachelor's degree and at least 1 year of work experience. The position requires a highly organized, analytical and detail oriented individual. The selected candidate should be able to work independently and take initiative, while also able to work well in a team setting. Given that the position will require interactions with senior leaders and experts, strong interpersonal skills are required. He or she should have excellent research, writing and editing skills, as well as fluency in Microsoft Word, Excel and PowerPoint, and email. Experience with Google Sites is preferred.

This is a temporary, part-time position (approximately 20-30 hours per week). Pay will be commensurate with experience. There is a possibility of converting this position from a temporary position to a term position for greater than six months.

Interested candidates should apply online. Applications will be accepted on a rolling basis and only those selected for an interview will be contacted. No phone calls, please.

Georgetown University is an Affirmative Action / Equal Opportunity Employer

 APPLY FOR THIS POSITION    BACK TO JOB POSTINGS



Printed from a Public Workstation

From: jslovinec16@hotmail.com
To: kilkennr@georgetown.edu
CC: mer47@georgetown.edu
Subject: RE: Memo to Georgetown of July 12, 2014 on appeal after barring
Date: Wed, 23 Jul 2014 15:22:14 -0400

.

From: jslovinec16@hotmail.com
To: jg1502@georgetown.edu
CC: lbrown@georgetown.edu
Subject: Memo to Georgetown of July 12, 2014 on appeal after barring
Date: Sat, 12 Jul 2014 16:45:48 -0400

MEMO
TO: GEORGETOWN OF JULY 12, 2014 ON APPEAL AFTER BARRING
FROM: JOSEPH SLOVINEC, 425 2ND ST., N.W., WASHINGTON, D.C. 20001          *Joseph Slovinec*
JULY 12, 2014

SCHEDULING

    This is not yet a complete appeal of Mr. Smith's memo and it is not due until July 18.  It is
released today because:
- Dr. Randazzo considered asking for a meeting with me this past week and I needed to postpone
it until after July 21 since I feel she needs to review factual discrepancies in this memo first.
- My Hotmail system may shut down July 13 due to a management claim I have too much junk
e-mail (probably from Democratic campaigns) and they are trying to demand phone access I do
not usually have at the shelter: I will complain to D.C. Attorney General since I feel it is actually
due to my court cases
- It is easier to send these out to all recipients of Mr. Smith's e-mailed report today yet it is easier
for them to direct responses to Ms. Kilkenny



AGREEMENT REACHED AFTER PARTIAL MEDIATION

It seems mediation on my barring order case was partially achieved although Mr. Smith will get told several times he did not adhere to exact procedures and format in IDEAA Grievance instructions: he also omitted a Rebuttal from Georgetown Police Dept. which was bad. However, I am ready to sign this document:

I, Joseph Slovinec, agreed to proposed mediation or compromise steps Mr. Smith suggested in a June 27 letter accompanying IDEAA Notice of Findings: "if you are invited , to interview for a job at Main Campus, Dr. Randazzo will be able to facilitate your participation in an interview....she can work with you and GUPD.....If you are invited for an interview at the Law Center or SCS, you are free to attend those without working through Dr. Randazzo", However, his language on scope of Dr. Randazzo's duties on resources in my employment search is unclear so I will use Mr. Smith's language on p. 15 of the findings: "In this regard, Dr. Marisa Randazzo, Director of the University's Threat Assessment Team has agreed to be the University's sole point of contact for Mr. Slovinec to assist with identifying and reconnecting with D.C. supportive services." Mr. Slovinec has agreed to talk to Dr. Randazzo on visits yet may ask her to contact someone who is not opposed to contact. Acceptance of this agreement does not relieve parties of fact-finding responsibility under D.C. law and Georgetown rules.

FOR GEORGETOWN                          PRO SE


Marisa Randazzo                    Joseph Slovinec
or designate of Rosemary Kilkenny
With date:
PARTIAL TEXT OF APPEAL (WITH EXPECTED AMENDMENTS)

Joseph Slovinec maintains he actually was harassed on basis of political affiliation and Ms. Kilkenny should reverse Mr. Smith's decision in that area. Joseph Slovinec objects early on July 12, 2014 to many defects in Mr. Smith's writing including a misleading claim with bias to benefit with D.C. government that J. Slovinec agreed he had a disability when he did not.

SUBSEQUENT PAGE NUMBERS REFER TO MR. SMITH'S IDEAA NOTICE OF FINDINGS

P. 1 Truthfulness requires that Ms. Kilkenny strike Mr. Smith's inclusion of 'ALLEGED VIOLATION: Disability Discrimination/Harassment" and an erroneous statement "Mr. Slovinec claims that GUPD subjected him to harassment based on... disability."
THIS CONFLICTS WITH: Mr. Smith's more correct statement on p. 9: "Mr. Slovinec questioned whether GUPD had "contact with Ms. Lindsay, a D.C. bureaucrat who made an erroneous statement I was disabled.""
Lt. Powell omitted the Lindsay-disability issue from his response. Mr. Smith was negligent when he failed to ask GUPD directly about the issue.


Printed from a Public Workstation, Library of Congress, Newspaper/Periodicals ...   10/27/2014



MAJOR FALSIFICATION ON ALLEGED DISRUPTION OF MIKE SCHAUB'S CAREER CENTER EVENTS

POTENTIAL FRAUD when Mr. Smith uses misleading language and still seems to include a falsified report, perhaps grounds for fraud, that J. Slovinec disrupted events at Mike Schaub's Career Center.

DR. RANDAZZO IS ASKED TO SEE P. 5; "While Mr. Slovinec no longer had any official affiliation with the University, he frequently attended events on the Main Campus and continued to make efforts to attend Career Center sponsored events, some of which he was not invited to. At some of those events, GUPD was called by event attendees to intervene. As an example, in April 2012, GUPD received a report of a "suspicious person/non Georgetown University white male in the Copley Formal Lounger at an event at that location not invited. GUPD asked Mr. Slovinec to leave the event and he complied."  Mr. Smith claimed GUPD was called to intervene when I disrupted Career Center event and mixed this together with an April 2012 gay Lavender graduation event: it was not sponsored by Career Center, I did not disrupt it, yet I was not invited and a GUPD officer told me to leave. However, this only happened once and attempts to add or exaggerate events are still falsified. I have concerns since I  believe this document was re-edited several times. (I also have memo to Mike Schaub).

P. 1 Mr. Smith omitted that when I also got DOES money as an unemployed D.C. resident, Linda Greenan discriminated against me in favor of Ward 7 residents in a mostly black area including ex-convicts in Project Empowerment: they received mentoring and I did not. PP. 4-5 Mr. Smith also helps Mayor Gray and black supporters in Ward 7 with omitting material where both DOES and Georgetown CCPE pledged to aid J. Slovinec's future job search after classes ended in vague communications with Monica West, a duty they had under law since they used a Workforce Investment Act grant according to 20 CFR 666.100.

P. 6 Dr. Randazzo is asked to talk to pro-Obama past intern Myriam Alexander-Kearns who agreed to allow J. Slovinec to attend one McCourt School event not sponsored by Career Center and J. Slovinec wrote a letter of complaint to Dean Montgomery and Dean Rankin: J. Slovinec has past court work experience of 6 years in Illinois and 1 year of Medicaid work in Illinois within McCourt School interests that J. Slovinec was expected to use in a Project Management job search: she should also ask to talk to both Deans. Ms. Robbins was wrong to complain and seek J. Slovinec's barring since he complied with her directive not to attend more events: he revises it to suspicion she disliked J. Slovinec's past opposition to nuclear weapons testing. A Dept. of Energy employee taught J. Slovinec at Georgetown.

p. 9 Prof. Mujica's invitation to Leavey Center proved it was erroneous when Lt. Powell claimed J. Slovinec did not have a lawful reason to visit campus March 21, 2014

p. 11 Mr. Smith never had evidence to support GUPD accusation of "disruptive" "behavior" during the Hoya visit March 21, 2014 when he merely left a note for T.M. with a woman: he has a copy and it was polite.

Therefore a threat assessment should include the call to the Hoya by a fanatic Republican, the only one who would have a motivation to seek barring.

The final text will include how Mr. Smith sought to discriminate against J. Slovinec on a McCourt School job in Juvenile Justice when he has the appropriate court work experience in Illinois, not



# United States District Court
## for the District of Columbia

the ___27+N___ day of ___JUNE___ 19 2016

___JOSEPH SLOVINEC___        ASKS FOR INFORMA PAUPERS
vs.

___GEORGETOWN UNIVERSITY___     }

Civil / Criminal
Action No. _____

NOT ASSIGNED YET

The Clerk of said Court will ___FILE DOCUMENT FOR PLAINTIFF___
WHO ASKS FOR IN FORMA PAUPERIS STATUS IN "FILING
OF 42 U.S.C. 1983 COMPLAINT" ON P. 1, IT IS
"GEORGETOWN IDEAA OFFICE IN A REPORT OF JUNE 26,2014"
"THE REPORT WILL BE PROVIDED TO THE COURT"

___June 27, 2016___
Date

___Joseph Slovinec___
Signature

___JOSEPH SLOVINEC___
Print Name

___425 2ND ST NW___
Address

___WASHINGTON DC 20001___
City        State        Zip Code

___202-393-1909___
Phone Number

_____
BAR IDENTIFICATION NO.

## CERTIFICATE OF SERVICE

**RECEIVED**

JUN 27 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia