UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH SLOVINEC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 16-cv-2035 (TSC) |
| | ) |
| GEORGETOWN UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

In this action filed *pro se*, Plaintiff Joseph Slovinec sues Georgetown University under 42 U.S.C. § 1983 for due process violations.[1] Defendant has moved to dismiss the Complaint on the grounds that it fails to comply with the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure and fails under Rule 12(b)(6) to state a claim upon which relief can be granted. (Def.'s Mot. to Dismiss, ECF No. 10). Since the court agrees that no claim has been stated, it will GRANT Defendant's motion to dismiss under Rule 12(b)(6) for the reasons explained below.[2]

---

[1] Plaintiff suggests in the caption of the Complaint, and in the Complaint itself, that he intends to bring at some unspecified time a "related employment discrimination claim under D.C. 12-301." (Compl. Caption; *see* Compl. at 2). D.C. Code § 12-301 establishes the time limits for bringing actions in the District of Columbia; it does not create a private right of action, let alone one for employment discrimination. Moreover, the jurisdiction of the federal courts is limited "to deciding [actual] 'Cases and Controversies.' " *In re Navy Chaplaincy*, 534 F.3d 756, 759 (D.C. Cir. 2008) (quoting U.S. Const. art. III, § 2).

[2] Also pending are Plaintiff's motions for questionable relief. (*See* Mot. for Limited Intervention, ECF No. 5; Mot. to Claim Default Judgment on Basis of Improper Pleadings

1

## I. BACKGROUND

Plaintiff claims due process violations "against Georgetown University for actions of Michael Smith of the Georgetown IDEAA office in a report of June 26, 2014 where he persisted in sympathy or support for false accusations[.]" (Compl. at 1). In light of these claims, the court will adopt the facts provided by Director Michael W. Smith in the Notice of Findings issued by the Georgetown University Office of Institutional Diversity Equity and Affirmative Action ("IDEAA") on June 26, 2014 (hereafter "Findings"), which both parties have placed in the record and upon which they have substantially relied. (*See* Def.'s Mem. at 4-7 and Ex. 1; Compl. at 12-26).

In 2010, Plaintiff was unemployed and homeless. He was accepted into a program funded by the Workforce Investment Act ("WIA"), 29 U.S.C. § 2801 (repealed 2014). The WIA "provide[d] a range of workforce development activities administered through State and local employment offices . . . to benefit employers, dislocated workers, and low-income youth." (Findings at 3, n.1). The District of Columbia Department of Employment Services ("DOES") "provide[d] 'One Stop' service centers to [local] WIA participants." (*Id*. at 3). Thus, once Plaintiff was accepted into the program, DOES assigned him a job caseworker to "provide guidance and assistance in career and employment services." (*Id*.)

---

by Opposing Party, ECF No. 14; Mot. and Revised Mot. for Intervention from the U.S. Dep't of Justice and Separately the U.S. Dep't of Labor, ECF Nos. 16, 17; and Mot. to Strike Motion to Dismiss Pleading for Fraud Upon the Court, ECF No. 18). Defendant has opposed each motion for good reasons that the court hereby adopts to summarily deny Plaintiff's motions. (*See* Defs' Opp'n, ECF No. 7, 15, 19).

During the time period relevant to this case, Defendant, through its School of Continuing Studies' Center for Continuing and Professional Education ("CCPE"), collaborated with DOES to offer training to WIA participants in four non-degree certificate programs: Project Management, Financial Planning, Paralegal Studies, and Non-profit Management. DOES identified qualified participants and CCPE assisted the participants with registering for courses and successfully completing the program. (*See* Findings at 3). Defendant "was under no obligation to provide career services or employment guidance beyond a recipient's completion of the certificate program." (*Id*. at 4).

In February 2011, Plaintiff successfully completed the Project Management program, which he attended for approximately three weeks. (Findings at 4). "In mid-2011, [the University] voluntarily withdrew" as a training provider "because of administrative and policy changes at DOES." Plaintiff was informed of this withdrawal by his DOES case worker, and was permitted to use the University's Career Center "informally for a short period of time after he completed his program," but he was informed in January 2012 that the "arrangement was discontinued for programmatic and administrative reasons[.]" (*Id*. at 4-5). Nevertheless, Plaintiff continued to frequent the University's campus. (*See id*. at 5-6).

After completing the Project Management program, Plaintiff "approached staff members of CCPE numerous times requesting financial support to enroll in additional certificate programs," but "CCPE does not provide financial assistance of any kind for students enrolled in non-degree/non-credit professional certificate programs." (*Id*. at

3

4).  Because of Plaintiff's "insisting that CCPE needed to assist him in finding additional financial assistance," the Associate Dean of CCPE, Edwin Schmierer, "agreed to meet" with Plaintiff on June 8, 2012.  In a follow-up written summary to Plaintiff, Schmierer reiterated that the University does not offer financial assistance for non-credit professional certificate programs or courses, and does not offer free courses.  Schmierer also informed Plaintiff that the School of Continuing Studies "does not have a career advisory department or career counselors" but that he could "apply to any positions posted to the CCPE LinkedIn group" and to "any Georgetown University position you find appropriate for your experience and interests."  Schmierer added that "CCPE does not control the hiring requirements for those positions as they are determined by the employer or recruiter that posts the position."  (*Id*.).

> Defendant alleges that after meeting with Schmierer, Plaintiff
>> began emailing various University staff with requests for assistance in seeking employment.  He also applied for over 75 positions at the university [and] began appearing without invitation at private campus events, including events sponsored by the Career Center for full-time, degree-track students.  On at least three occasions, attendees at such events contacted University police to report [Plaintiff's] uninvited attendance and erratic and inappropriate behavior.

(Mem. at 5, citing IDEAA Findings at 5-6).  In March 2014, after receiving a report of a suspicious person on campus and aware of Plaintiff's "history of showing up at private events uninvited and behaving in a disruptive manner," the University police issued an order barring Plaintiff from the campus for two years.  (*Id*., citing IDEAA Findings at 9).

4

Undeterred, Plaintiff continued to email "various University personnel, including [IDEAA's] general email account," alleging discrimination and retaliation. (Mem. at 6, citing IDEAA Findings at 7). IDEAA treated Plaintiff's emails as a complaint filed on April 4, 2014, and investigated what it discerned to be two claims: (1) that the University police "subjected [Plaintiff] to discrimination and harassment based on political affiliation and disability when it issued [the] March 21, 2014 [barring order]"; and (2) that Plaintiff was "subjected to retaliation which resulted in differential treatment because Linda Greenan, the former Associate Vice President for External Affairs, provided mentoring and other supportive services to other job seekers, but not to [Plaintiff], as a . . . WIA recipient." (Findings at 1). Based on its "review of all the evidence, including documentary evidence from both parties," (*id*. at 11, 13), IDEAA found (1) that no University policies addressing equal opportunity, discrimination, and harassment were violated with regard to the barring order, and (2) that the retaliation claim was untimely under the University's 180-day grievance period because it "relates to several matters from 2010, 2011, and 2012 (*id*. at 2). IDEAA added that Plaintiff "does not provide – nor can IDEAA find – any facts supporting his conclusory claim of retaliation." (*Id*.).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" and "the grounds for the court's jurisdiction" so that a defendant has fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing cases). Rule

5

12(b)(6) permits a party to move for dismissal on the grounds that the complaint has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

A plaintiff's factual allegations need not establish all elements of a prima facie case, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28-29 (D.D.C. 2010), but they "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citations omitted). A complaint containing only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. In addition, the presumption of truth accorded factual allegations at this stage does not apply to a plaintiff's legal conclusions in the complaint, including those "couched" as factual allegations. *Id*. (quoting *Twombly*, 550 U.S. at 555).

"In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in

6

the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corporate Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014). Therefore, "'where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment' . . . 'Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied'. . . Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217-18 (D.D.C. 2012) (citations omitted); *see also Long v. Safeway, Inc.*, 842 F. Supp. 2d 141, 144-45 (D.D.C. 2012), *aff'd*, 483 Fed. Appx. 576 (D.C. Cir. 2012).

### III. ANALYSIS

Section 1983 provides a remedy where a person acting under color of state law, including District of Columbia law, deprives an individual of his Constitutional rights. 42 U.S.C. § 1983. Although § 1983 refers to "a person," a municipality may be held liable under the statute for injury suffered as a direct result of its unconstitutional policy, practice, or custom, *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 690-91 (1978), and "various circuits have applied Section 1983 and its limitations as set forth in *Monell* to private institutions such as Georgetown University where such private institutions employ quasi-state actors[,]" *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 62 (D.D.C. 2007), or actors who perform state functions. *See McGovern v. George*

7

*Washington Univ.*, \_\_\_ F. Supp. 3d \_\_\_, \_\_\_, 2017 WL 1166294, at \*8 (D.D.C. Mar. 28, 2017) ("Under District of Columbia law, '[t]he power of arrest . . . is the sole factor which distinguishes the holder of a special police commission from a private citizen.' ") (quoting *United States v. McDougald*, 350 A.2d 375, 378 (D.C. 1979)).

"Section 1983 is not the source of substantive rights, but rather 'a method for vindicating federal rights elsewhere conferred.'" *Blackman v. District of Columbia*, 456 F.3d 167, 177 (D.C. Cir. 2006) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)); *see also Pitt v. District of Columbia*, 491 F.3d 494, 510 (D.C. Cir. 2007) (citing *Baker*). Therefore, "'[t]he first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which [the defendant] is charged.'" *Graham v. Connor*, 490 U.S. 386, 394 (1989) (quoting *Baker*, 443 U.S. at 144, n.3).

The Fifth Amendment's due process clause protects individuals from deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. V. Therefore, "[a] procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015) (quoting *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009)). At a minimum, "the due process clause requires . . . that the government provide notice and some kind of hearing before final deprivation of a property [or liberty] interest." *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991). "Liberty interests may either be located in the Constitution itself or 'may arise

from an expectation or interest created by state laws or policies.'" *Atherton*, 567 F.3d at 689 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).

Plaintiff has not identified in his Complaint or Opposition the protected interest of which he was deprived without the requisite process. This alone is fatal to his claim. Nevertheless, construing the Complaint liberally, the court assumes the interest to be a liberty interest stemming from the campus police's barring order, which is the only governmental action reasonably attributable to Defendant.[3] *See Trazell v. Wilmers*, 975 F. Supp. 2d 133, 142 (D.D.C. 2013) (noting that "the Due Process Clause only applies to government action" and "private action . . . instigated by or dependent upon the exercise of governmental authority") (citing *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948); *Comm. of U.S. Citizens Living in Nicar. v. Reagan*, 859 F.2d 929, 946 (D.C. Cir. 1988) (internal quotation marks omitted)). But in order to bring such a claim, Plaintiff must have had a constitutional right to access the University's campus, of which there is no evidence. Even if Plaintiff had such a right, and the barring order alone constituted governmental action, the Complaint fails nonetheless because Plaintiff received the process due him under the Constitution.

A procedural due process claim is inherently tethered to an allegation that a plaintiff was not given "the opportunity to be heard 'at a meaningful time and in a meaningful manner' " in connection with the deprivation of his liberty interest.

---

[3] To the extent that Plaintiff asserts a due process violation based on the University's refusal to assist with his job search or to provide financial assistance for courses, the claim cannot proceed under § 1983 because such conduct is not "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Therefore, to state a claim, Plaintiff must allege that Defendant acted without due process of law. *See Propert*, 948 F.2d at 1331. The IDEAA report at the center of this action shows that Plaintiff received notice and a meaningful opportunity to be heard in a timely manner. Even if Plaintiff received no warning prior to the barring order, the subsequent IDEAA proceeding commenced shortly after the order was issued provided an adequate post-deprivation remedy to satisfy procedural due process. *See Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 229 (D.D.C. 2012) ([T]here is a 'well-recognized principle that due process permits [the government] to take summary administrative action without pre-deprivation process, but subject to a prompt post-deprivation hearing, where such action is needed to protect public health and safety.' ") (quoting *DiBlasio v. Novello*, 413 Fed. Appx. 352, 357 (2d Cir. 2011)); IDEAA Findings at 3 (documents considered in the review process included Plaintiff's April 4, 2014 written complaint, the campus police's May 15, 2014 response, Plaintiff's May 24, 2014 rebuttal, Plaintiff's "extensive emails from 2011 to the present," and "several [campus] police reports").

Finally, to the extent that Plaintiff claims a substantive due process violation, *see* Opp'n at 1, which again may only derive from the campus police's barring order, the alleged facts--such as they are--do not rise to that level. *See Zevallos v. Obama*, 793 F.3d 106, 118 (D.C. Cir. 2015) ("[S]ubstantive due process forbids only 'egregious government misconduct,' involving state officials guilty of 'grave unfairness' so severe that it constitutes either 'a substantial infringement of state law prompted by personal or group animus,' or 'a deliberate flouting of the law that trammels significant personal

or property rights[.]'")  (quoting *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 209 (D.C. Cir. 2003); *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988)).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss under Rule 12(b)(6) for failure to state a claim will be GRANTED, and Plaintiff's pending motions for relief to which he has shown no entitlement will be DENIED.  A corresponding order will issue separately.


Date:  July 31, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge